## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| ERIN HAMILTON, on behalf of herself and all others similarly situated, | ) ) ) | CIVIL NO. |
| | ) | CLASS ACTION COMPLAINT |
| 100 Luna Park Drive, Apt. 211 Alexandria, VA 22305, | ) ) | JURY TRIAL DEMANDED |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| LVNV FUNDING, LLC, | ) | |
| 200 Meeting Street, Suite 206 | ) | |
| Greenville, SC 29601, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| PROTAS SPIVOK & COLLINS, L.L.C., | ) | |
| 4330 East West Highway, Suite 900 | ) | |
| Bethesda, Maryland 20814, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff Erin Hamilton files this Complaint against Defendants LVNV Funding, LLC ("LVNV") and Protas Spivok & Collins, L.L.C. ("PSC") on behalf of herself and persons subjected to Defendants' violations of the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692 *et seq.* in the District of Columbia, Maryland, and Virginia. The FDCPA prohibits debt collectors from engaging in abusive, deceptive, unfair, and illegal collection practices. Ms. Hamilton also files this Complaint behalf of persons subject to debt collection by Defendants in the District of Columbia, pursuant to the District of Columbia Fair Debt Collection Practices Act (DCFDCPA), D.C. Code § 28-3814 and District of Columbia Consumer Protection Procedures Act (CPPA), D.C. Code § 28-3901 *et seq*. In support of her Complaint, she alleges and states as follows:

1

## I.   __INTRODUCTION__

1.      Plaintiff seeks damages stemming from Defendants' pattern and practice of attempting to collect and collecting on judgments, even though they have no documentation of the underlying debt, no evidence that LVNV was assigned the right to collect on the debt, and/or no certificate or affidavit of service indicating that the alleged debtor was ever on notice of a collection action. The subject judgments obtained and pursued by Defendants are lost, incomplete, or without a basis to demonstrate that Plaintiff or any other putative class member is obligated to LVNV in any way.

2.      In November 2017, Plaintiff learned that her employer was served with an order from the Superior Court for the District of Columbia, ordering it to garnish her wages to pay a debt to Defendant LVNV, represented by its counsel, Defendant Protas, Spivok & Collins, LLC, attached hereto as Exhibit A.

3.      Ms. Hamilton promptly retained counsel and discovered that Defendant LVNV through Defendant PSC was attempting to collect on a Bank of America credit card account that was closed over ten years ago. Ms. Hamilton has never had a credit card with Bank of America, she has never received any correspondence from Bank of America indicating that a debt was due, she never received notice from LVNV stating that it had purchased a debt that she had incurred with Bank of America, she has never received a collection letter from LVNV, and she was never served with process on the underlying debt.

4.      When Ms. Hamilton's counsel asked PSC for more information, it admitted that Defendants had no documentation of the underlying debt, no documentation that LVNV even had the right to collect on the debt, and no proof that LVNV had ever sent Ms. Hamilton a collection letter or served her with a complaint to collect the debt. Yet Defendants maintained

that the judgment that LVNV had obtained in Virginia was nevertheless valid, and that she owed the full amount they sought, over $11,000.

5.      It seems absurd that Defendants would try to collect on debts they have no proof are due and owing, but that is their standard operating procedure. They routinely assert a right to collect on default judgments where they have no documentation, and they have not served the consumer, but instead engaged in "sewer service." Defendants know that most individuals will not be able to retain counsel to assert their rights and contest Defendants' illegal practices.

6.      This Court can compensate consumers who have been the targets of Defendants' unscrupulous practices and thereby deter such conduct in the future.

## II.    **JURISDICTION**

7.      This Court has jurisdiction over the subject matter of this litigation pursuant to 15 U.S.C. §1692k(d), which gives jurisdiction to any appropriate United States district court over an action under the FDCPA without regard to the amount in controversy within one year from the date on which the violation occurs.

8.      This Court also has supplemental jurisdiction over the state law claims because they arise from a common nucleus of operative facts.

9.      Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in the District, and Defendants sought to seize Plaintiff's property in the District.

## III.   **PARTIES**

10.     Plaintiff Erin Hamilton is a natural adult person, and she is a consumer as defined in 15 U.S.C. §1692a(3) and D.C. Code § 28-3814. Ms. Hamilton has resided at 100 Luna Park Drive, Apt. 211, Alexandria, Virginia at all relevant times herein.

11.     Defendant LVNV Funding, LLC ("LVNV") is a company located at 200 Meeting Street, Suite 206, Greenville, South Carolina. LVNV attempted to collect a debt, as defined in 15 U.S.C. §1692a(5) and D.C. Code § 28-3814(b), from Plaintiff. LVNV is a debt collector as defined in 15 U.S.C. §1692a(6) because it is engaged in a business with the principal purpose of which is the collection of any debts and as defined in D.C. Code § 28-3814(b)(3). LVNV regularly conducts business in this District, as reflected in the D.C. Superior Court docket, where it is listed as the plaintiff in hundreds of debt collection actions.

12.     Defendant Protas, Spivok & Collins, LLC ("PSC") is a law firm with offices at 4330 East West Highway, Suite 900, Bethesda, Maryland 20814-4454. It describes itself on its website as a "creditors' rights law firm." It is a debt collector as defined in 15 U.S.C. §1692a(6), and as defined in D.C. Code § 28-3814(b)(3). PSC regularly conducts business in this District, as reflected on its website: "Our service area includes the District of Columbia, Maryland and Northern Virginia and we maintain associations with collection attorneys in other geographic areas throughout the country."

## IV.     FACTUAL ALLEGATIONS

### A.     Defendants' Illegal and Deceptive Practices

#### 1.     *LVNV Funding, LLC*

13.     LVNV is one of the largest debt collectors in the country. It purchases charged-off debts from banks and consumer finance companies at a large discount from their face value, and profits by collecting more than it paid to acquire the debts. When it purchases these debts, LVNV typically obtains limited information in an electronic spreadsheet, such as the name and address of the cardholder, the original account number, the balance due, and last date of use.

14.     According to the Consumer Financial Protection Bureau, debt buyers and
collection firms **typically do no research** to verify the accuracy of the information they receive,
such as reviewing original transaction records.[1] For example, in a self-reporting poll of 58 debt
collectors, only 17 (29%) "always" obtained the Social Security number for the file, only 9
(16%) obtained the date of birth, and only 22 (38%) always obtained the chain of title. Most
tellingly, **only 8 of 58 (under 14%) stated that they always obtained account agreement
documentation or billing statements**. In all other situations, the debt collectors were relying
completely on information in electronic spreadsheets whose creator would provide no warranty
or assurance that the information was accurate.

15.     Defendants have pursued Plaintiff for an alleged Bank of America account. Bank
of America, like other financial institutions, has a pattern and practice of providing sparse and
faulty information about charged-off debt. It has sold off millions of dollars of charged-off debt,
with a standard contract provision that it would not make "any representations, warranties,
promises, covenants, agreements, or guaranties of any kind or character whatsoever" about
whether the information in the accounts it was selling was accurate. Jakob Halpern, *Bad Paper*
(2014).

16.     Obtaining and reviewing information about collection accounts is an expense that
debt collectors know they do not need to incur. Most of the people they pursue are unfamiliar
with their rights under the FDCPA, and cannot afford an attorney, so debt collectors know that
they rarely will have to defend their actions in court.

17.     The Federal Trade Commission noted, in a 2009 report, "When accounts are
transferred to debt collectors, the accompanying information is so deficient that the collectors

---

[1] Consumer Financial Protection Bureau, Study of Third-Party Debt Collection Operations, July
2016, https://goo.gl/HKnPqe (viewed June 3, 2018).

seek payment from the wrong consumer or demand the wrong amount from the correct

consumer." There is no conceivable reason to give Defendants the benefit of the doubt for

lacking the essential information they would need to substantiate the debt they are pursuing

against Erin Hamilton, and others who are similarly situated.

18.     The FTC has estimated that LVNV and other debt collectors win nearly 90

percent of debt collection cases, so they will never have to prove anything to obtain a default

judgment. Overburdened courts across the country routinely rubber-stamp judgments that debt

collectors could not obtain if the matters had been properly contested.

19.     The non-partisan United States Government Accounting Office recently

summarized debt collectors' practices:

> our analysis of information provided by the National Association of
> Attorneys General found at least 60 enforcement actions were taken by
> state attorneys general against debt collection companies from January
> 2006 through May 2009, of which 28 involved or may have involved the
> collection of credit card debt. These actions alleged a variety of illegal
> debt collection practices, such as deducting money from consumers'
> bank accounts without authorization, operating in states without proper
> licenses, and refusing or failing to provide consumers with proof of their
> debts. Generally, state attorneys general either negotiated a settlement with
> the debt collection company or brought a court action against the company.
> Settlements included penalties such as refunds to consumers, cancellation
> of consumers' debts, civil penalties, and injunctive relief aimed at
> preventing future collection violations.[2]

20.     The Mississippi attorney general sued JP Morgan Chase, with evidence from

employees of the bank describing a dysfunctional workplace with high error rates, lack of

training, inconsistent policies and high turnover. It employed third-party debt collectors and law

firms, including Mann Bracken, to collect on these undocumented debts, and to pursue them in

---

[2] GAO Report, Fair Debt Collection Practices Act Could Better Reflect the Evolving Debt
Collection Marketplace and Use of Technology, September 2009 (available at
http://www.gao.gov/new.items/d09748.pdf) at 38-39.

arbitration claims. In September 2013, JP Morgan was ordered to reimburse $309 million to 2 million consumers for its unlawful practices.

21.     LVNV has a history of improperly using the courts to attempt to collect debts it knows are unenforceable. For example, in the matter of *Finch v. LVNV Funding, LLC*, 212 Md. App. 748, 71 A.3d 193, *reconsideration denied*, *cert. denied sub nom. LVNV Funding v. Finch & Dorsey*, 435 Md. 266, 77 A.3d 1084 (2013), the Maryland Court of Special Appeals held that any judgments obtained by an unlicensed entity, such as LVNV, were ***void*** under Maryland law. *See also Gage v. LVNV*, Circuit Court for Anne Arundel County, Maryland (Case No. C-02-CV-15-001652) (challenging LVNV's purported right to collect on void judgments assigned to it).

22.     LVNV testified in the *Finch* case that it acquires consumer debts in default for pennies on the dollar and then engages in the regular and routine business of debt collection, including trying to collect the debt by utilizing courts to collect upon void judgments under the color of law. LVNV also testified that the purported debt that it pursues from Plaintiff and others is also a consumer debt.

23.     In *Gomez v. Resurgent Capital Services, LP and LVNV Funding*, LLC, Case No. 13-7395 (S.D.N.Y.), the court granted the plaintiff summary judgment on her FDCPA claim that LVNV and its contractor continued collecting on a debt despite the fact that LVNV had no evidence that the debt had ever been properly assigned to it, and it continued garnishing her wages in violation of a court order. The court also held LVNV vicariously liable for the actions of its agents who carried out conduct violating the FDPCA on its behalf.

24.     In 2014, LVNV's parent company, Sherman Acquisition Group, reached a settlement with the New York State Attorney General, along with another debt buyer, Portfolio Recovery Associates. The Attorney General stated, "For years, the two companies had sued New

York consumers and obtained uncontested default judgments against the individuals who failed to respond to these lawsuits, even though the underlying claims were untimely under New York law." Sherman Financial Group paid $175,000 in penalties.[3]

25.     LVNV Funding and its affiliate, Resurgent Capital, reached a settlement in 2012 with the Maryland Commissioner of Financial Regulation to settle charges that they engaged in unlicensed collection activities, hired attorneys that filed false or misleading pleadings and affidavits in court, and misrepresented amounts due and owing in court.[4]

26.     The District of Columbia Department of Consumer and Regulatory Affairs states, "In order to operate legally in the District of Columbia, all businesses must be licensed."[5] D.C. Code § 47-2851.02 states, "A person which is required under law to obtain a license issued in the form of an endorsement to engage in a business in the District of Columbia shall not engage in such business in the District of Columbia without having first obtained a basic business license and any necessary endorsements in accordance with this subchapter."

27.     It appears that LVNV does not have a basic business license, and thus is not legally entitled to engage in business in the District of Columbia.[6]

---

[3] *See* https://goo.gl/6bytPz (viewed June 2, 2018).

[4] *In the Matter of LVNV Funding LLC et al.*, CFR-FY2012-012 (2012), https://goo.gl/Tm69pa (viewed June 3, 2018).

[5] https://eservices.dcra.dc.gov/BBLV/Default.aspx (viewed June 2, 2018).

[6] https://eservices.dcra.dc.gov/BBLV/Default.aspx (viewed June 2, 2018) (online business license verification page). Searches for "LVNV" and "LVNV Funding, LLC" yielded no results.

2. *Mann Bracken LLC*

28.     Mann Bracken, a now-defunct law firm, was notorious in the history of abusive consumer debt collection. For years, the law firm operated as a debt collection mill, pursuing consumers with predatory, unfair, illegal and deceptive practices, much like foreclosure firms robo-signed and backdated fabricated documents and harassed thousands of homeowners during the foreclosure crisis.

29.     Mann Bracken typically used "sewer service" to obtain judgments against individuals, with no substantiation that the debt is due and owing, or that LVNV even owns the debt. Sewer service "describes the situation in which the process server fails to deliver the summons and complaint to the defendant, but, nevertheless, reports to the plaintiff that service is complete. Sewer service problems resulting in default judgments in favor of plaintiffs who have acted in good faith are the most troublesome cases of all, especially when a statute of limitations problem also is involved."[7]

30.     In 2009, the New York Attorney General sued Mann Bracken and its debt collector, American Legal Process, and asked the court to vacate all default judgments secured against New York consumers unless they could provide evidence (other than an affidavit) that proper legal service was made. *See* Ray Rivera, Suit Claims Fraud by New York Debt Collectors, *New York Times,* Dec. 30, 2009. The owner of American Legal Process pled guilty to fraud and served jail time for the offense.

31.     In one of these cases, when Mann Bracken attempted to obtain an extension of time to serve process, a New York court denied the motion, citing the New York Attorney

---

[7] Wright & Miller, Time Limit for Service, 4B Fed. Prac. & Proc. Civ. § 1137 (4th ed.) (footnote omitted).

General's contentions that Mann Bracken had been engaged in widespread sewer service, and reasoning that it would not be in the interests of justice:

> Given the sparse evidence presented, and **the assigned-debt industry's frequent pursuit of claims that lack proper documentation**, *see, e.g. Citibank, N.A. v. Martin, supra; Cach LLC v. Smith*, index no. 29236, order dated April 29, 2009 (Dist Ct Nassau Co.); *Rushmore Recoveries X, LLC v. Skolnick*, 15 Misc 3d 1139[A], 841 N.Y.S.2d 823, 2007 NY Slip Op 51041[U] [Dist Ct Nassau Co]; *Palisades Collection, LLC v. Gonzalez*, 10 Misc 3d 1058[A], 809 N.Y.S.2d 482, 2005 NY Slip Op 52015[U] {Civ Ct NY Co.], the Court seriously doubts whether plaintiff can prove its right to pursue the claim without producing a properly documented assignment and proof of the validity of the underlying claim. Unless plaintiff can produce such proof, it should *not* be granted a discretionary extension of time, "in the interest of justice," to make proper service of process.

*LVNV Funding v. Delgado*, 899 N.Y.S.2d 60 (Aug. 3, 2009) (emphasis added).

32.     Mann Bracken went bankrupt in 2010 after news broke that it had been engaged in a nationwide fraud of unprecedented proportions: it funneled its collection actions into arbitration by the National Arbitration Forum (NAF), pursuant to mandatory arbitration clauses in the underlying contracts. It was subsequently revealed that ***NAF and Mann Bracken were subsidiaries of the same company***, Accretive LLC, an absurd conflict of interest. NAF ruled for its corporate affiliate *almost 100% of the time*, even where there was overwhelming proof in favor of the alleged debtor.[8]

33.     Maryland courts subsequently dismissed tens of thousands of debt collection lawsuits brought by Mann Bracken, and state financial regulators revoked its license. In *In re National Arbitration Forum Trade Practices Litigation,* Case 10-MD-2122 (D. Minn.), plaintiffs

---

[8] *See* N. Koppel, Mann Bracken, Debt-Collecting Law Firm Extraordinaire, To Shut Down, *Wall Street Journal*, Jan. 20, 2010; P. Lunsford, Embattled Firm Accretive Tied to Debt Collection Arbitration Scandal, *InsideARM*, Apr. 27, 2012, https://www.insidearm.com/news/00013984-embattled-firm-accretive-tied-to-debt-col/ (viewed June 8, 2018).

obtained a multimillion dollar settlement against NAF, Mann Bracken and Accretive, as a result of which NAF dismissed $1 billion in claims based on its bogus arbitration decisions nationwide, and Mann Bracken was barred from collecting on any awards issued by NAF. *See id.*

34.     The Baltimore Sun reported, "In Maryland, officials estimate that at least 40,000 court cases filed by Mann Bracken will be dismissed in the wake of the firm's shutdown." J. Hopkins and A. Walker, After the Fall: Collapse of Mann Bracken, One of the Largest Debt-Collector Law Firms, Lifts the Veil of an "Oppressive" Industry, *Baltimore Sun,* Mar. 21, 2010.

35.     Now deprived of a steady stream of ill-gotten gains from railroading consumer victims through kangaroo court arbitration proceedings, Mann Bracken was placed in receivership. The receiver used remaining firm assets to settle outstanding claims, including FDCPA claims filed against the firm.

36.     Mann Bracken's fraud was also a fraud on the court system. Judgments obtained through arbitration are enforceable in United States federal and state courts. Courts are unable to exercise oversight over their operations, but they must defer to arbitration rulings except in rare cases.

37.     The bogus judgments and collections that Mann Bracken had racked up through its fraudulent practices did not go away. LVNV simply hired new lawyers and continued collecting on these dismissed cases, again with no regard to the lack of documentation they had to substantiate what Mann Bracken had done in the first instance. *See* Caryn Tamber, Thousands of Mann Bracken Cases Have Been Dismissed, But Will Anyone Re-File? *The Daily Record*, Jan. 18, 2010. In Ms. Hamilton's case, as in so many others, the file with her name on it was transferred from Mann Bracken to PSC.

38.     Unlike the individuals they victimized, Mann Bracken's attorneys and paralegals were never harassed by debt collectors, and they never faced any consequence for their actions. They simply joined other debt collector firms, including an attorney and paralegal from Mann Bracken, Robert Burstein and Anthony Terranova, who joined Defendant PSC. Mr. Burstein was counsel of record for Defendant PSC in obtaining the writ of garnishment against Ms. Hamilton and opposing the motion to vacate the writ.

### 3.     *Protas, Spivok & Collins, LLC ("PSC")*

39.     PSC is a law firm that practices throughout the State of Maryland, the District of Columbia and Virginia, and represents creditors against consumers including the Named Plaintiff. The members of PSC include Jordan M. Spivok and Phillip J. Collins.

40.      PSC and LVNV have a pattern and practice of pursuing collection void judgments that they know they have no right to collect, as a matter of law. As the corporate designee of PSC, Phillip J. Collins testified in the Circuit Court for Baltimore City, Maryland under oath in the matter of *Finch v. LVNV*, Case No. 24-C-11-007101, and based on the documents admitted into evidence to the following facts:

      a.  PSC has a creditor's rights practice in which it conducts collections work and "any type of litigation that would relate to a creditor," including filing lawsuits and garnishments on behalf of creditors in Maryland state courts.

      b.  PSC filed motions to garnish wages on behalf of LVNV in Maryland courts against subclass members in the *Finch* action based upon the void judgments entered in favor of LVNV. In those garnishment proceedings, PSC and Mr. Collins sought to collect from the wages of

the subclass members in *Finch* but did not disclose to the various state courts or the *Finch* subclass members that judgments PSC was seeking to enforce were void and unenforceable based on the first appellate decision in *Finch*.

c. Mr. Collins claimed that "up to a week" before the commencement of the *Finch* trial, neither he nor PSC knew there was a class represented in the Finch trial and at that time "put in place efforts not garnish for – for people that may be in the class."

d. PSC could not "recall" if it had taken any steps to collect against the class members as of August 31, 2015.

41.     In *Jernigan v. Protas, Spivok & Collins*, LLC, Case No. ELH-16-03058 (D. Md.), PSC knowingly asserted a right on behalf of LVNV to collect on unenforceable, void judgments entered by Maryland courts at a time when LVNV had no right to obtain the judgments in the first instance. The Maryland federal court approved a class settlement in 2017.

**B.     Erin Hamilton**

42.     In November 2017, Plaintiff Erin Hamilton was notified by her employer that it had been served with a writ of attachment on a judgment from the Superior Court of the District of Columbia, Small Claims division, ordering it to garnish Ms. Hamilton's wages to pay a judgment against her, entered in a state court in Alexandria, Virginia on March 1, 2007 (Exhibit A). Her employer provided her with a copy of the writ, which was issued on October 18, 2017. LVNV was the plaintiff, and PSC was its counsel. The total Defendants sought was $11,695.25, which they calculated from an original amount of $7,153.72, with interest of 6% accruing from March 1, 2007, plus costs of $48.

43.     Ms. Hamilton was surprised and disturbed to receive this garnishment order, because she was unaware of any debt or judgment she allegedly owed to LVNV as the purported successor to Bank of America. She promptly retained counsel, who contacted PSC by telephone on December 12, 2017, and spoke with a male paralegal, asking if the firm could provide Plaintiff with the file or any documents on which the writ of garnishment was based. PSC's paralegal admitted to Ms. Hamilton's counsel that the firm had no documentation showing that the underlying debt was valid, nor did it have any evidence that Ms. Hamilton had ever been sent a collection letter or served with judicial process regarding collections on the underlying debt. Yet the paralegal insisted that the judgment was nonetheless valid and that the firm intended to pursue it by garnishing Ms. Hamilton's wages.

44.     In December 2017, Ms. Hamilton went to the Alexandria court to get a copy of the file. The limited Virginia court records available appear to reflect that LVNV, through its now-defunct counsel, Mann Bracken, obtained a default judgment in 2007 (Exhibit B), but the file contained no documentation of any debt incurred by Ms. Hamilton, no documentation of how the amount owed was calculated, no evidence that LVNV owned the debt, no evidence that LVNV had ever sent her a collection letter, and no evidence that it had served her with a copy of a complaint to collect on the debt. Where the case abstract asks for the last four digits of Ms. Hamilton's Social Security number, the entry is "0000."

45.     Ms. Hamilton promptly filed a motion to vacate the garnishment order as void and voidable in the D.C. Superior Court, small claims division, the court that had issued the writ of garnishment. In a hearing on April 18, 2018, the small claims court refused to vacate entry of the foreign judgment, despite the fact that Defendant PSC admitted it had no documentation of the

underlying debt or that Ms. Hamilton had been served with an action to collect on the debt. The court gave Ms. Hamilton a sixty day stay to vacate the judgment in Virginia state court.

46.     Ms. Hamilton was laid off of her job while the motion to vacate was pending, thus rendering the writ of wage garnishment unenforceable and moot.

47.     In a typical debt collection case, the consumer can challenge the chain of title, whether the collection letter complied with federal and state law, and whether the debt collector complied with procedural due process requirements regarding notice of suit. Defendants here essentially argue that because there is no evidence that they did any of those things, one should just assume that they and their predecessors did so comply.

48.     Without any evidence to substantiate the judgment against Defendant here, there is every reason to think that Mann Bracken, who victimized hundreds of thousands and probably millions of people on illegal and false pretenses, engaged in "sewer service" in order to obtain a default judgment against Ms. Hamilton. This conclusion is supported by the Defendants own admissions, discussed herein, and the actual court records. Plaintiff incurred expenses in attempting to correct Defendants' misguided and illegal collection activities. Plaintiff was also confused, angry, and suffered emotional distress, embarrassment, and mental anguish as a result of Defendants' illegal collection efforts.

## CLASS ACTION ALLEGATIONS

49.     Plaintiff brings this action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and the following proposed Class:

> All consumers who were named as a defendant in a default judgment obtained by LVNV Funding, LLC and Mann Bracken LLC, and from whom LVNV and its counsel then sought to collect on that default judgment, in the one year before the commencement of this action, in any court located in the states of Virginia, Maryland and the District of Columbia.

50.     Plaintiff also brings this action under Fed. R. Civ. P. 23(a) and (b)(3) on behalf of herself and the following proposed class ("the DC Subclass"):

> All consumers who were named as a defendant in a default judgment obtained by LVNV Funding, LLC and Mann Bracken LLC, and from whom LVNV and its counsel then sought to collect on that default judgment in the District of Columbia.

51.     Excluded from the Class and DC Subclass are Defendants, the officers, directors or employees of any Defendant, any judicial officer presiding over this action and the members of his or her immediate family and judicial staff, and any juror assigned to this action. Also excluded from the Class are any members of the certified class in *Finch*.

52.     The members of the proposed class are so numerous that joinder of all members is impracticable. Plaintiff estimates that the number of class member is at least in the hundreds, if not thousands. Although the precise number of members of the proposed class is currently unknown to Plaintiff, this information is readily ascertainable from the books and records of Defendants.

53.     Plaintiff has a claim that is typical of the claims of the proposed class, and she has no interests adverse to or in conflict with the class. Plaintiff is represented by competent counsel with experience in class action and FDCPA litigation, and she will fairly and adequately protect the interests of the proposed class.

54.     There is no foreseeable difficulty managing this action as a class action. Common questions of law and fact exist with respect to all members of the proposed class, which will predominate over any questions solely affecting individual members. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a

single forum simultaneously, efficiently, and without the duplication of effort and expense that would result from numerous individual actions. Class treatment also will permit the adjudication of relatively small claims by many class members who could not afford to individually litigate a claim against corporate defendants.

## CLAIMS FOR RELIEF

## COUNT I

### Violations of Sections 1692e & 1692f of the Fair Debt Collection Practices Act

55.      Plaintiff realleges and incorporates the preceding paragraphs of the complaint as if fully set forth herein.

56.      Plaintiff brings this Count individually and on behalf of the proposed Class:

> All consumers who were named as a defendant in a default judgment obtained by LVNV Funding, LLC and Mann Bracken LLC, and from whom LVNV and its counsel then sought to collect on that default judgment, in the one year before the commencement of this action, in any court located in the states of Virginia, Maryland and the District of Columbia

57.      Section 1692e of the FDCPA prohibits a debt collector from using any false, deceptive, or misleading representations in connection with the collection of any debt.

   a.   Specifically, Section 1692e(2) prohibits a debt collector from making any "false representation of . . . the character, amount, or legal status of any debt."

   b.   Section 1692e(5) prohibits a collector from threatening "to take any action that cannot legally be taken or that is not intended to be taken."

   c.   Section 1692e(10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

58.     Section 1692f of the FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt."

    d.     Specifically, Section 1692f(1) prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

    e.     Section 1692f(6) of the FDCPA prohibits "[t]aking or threatening to take any nonjudicial action to effect dispossession or disablement of property if (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest; (B) there is no present intention to take possession of the property; or (C) the property is exempt by law from such dispossession or disablement."

59.     Defendants engaged in false, deceptive, misleading, unfair, illegal, and unconscionable acts under Sections 1692e and 1692f of the FDCPA by attempting to collect on debts that they could not verify were owed by Plaintiff and the Class or that the amounts due were properly calculated, for which they have no proof that Plaintiff and the class were sent collection letters or served with judicial process to collect the underlying debt, and for which they could not demonstrate that they had a right to collect.

60.     In addition, Defendant LVNV engaged in illegal action by operating as an unlicensed business under D.C. Code § 47-2851.02.

61.     Plaintiff and the Class have suffered actual economic and non-economic damages, and have incurred attorney fees and court costs as a result of Defendants' illegal debt collection practices, and other actions described herein.

## COUNT II

Violation of District of Columbia Fair Debt Collection Practices Act ("DCFDCPA"),
D.C. Code § 28-3814, and District of Columbia Consumer Protection Procedures Act
("DCCPPA"), D.C. Code § 28-3901 *et seq.*

62.     Plaintiff realleges and incorporates the preceding paragraphs of the complaint as

if fully set forth herein.

63.     Plaintiff brings this Count individually and on behalf of proposed "DC Subclass":

All consumers who were named as a defendant in a default judgment obtained by
LVNV Funding, LLC and Mann Bracken LLC, and from whom LVNV and its
counsel then sought to collect on that default judgment in the District of
Columbia.

64.     All consumers who were named as a defendant in a default judgment obtained by

LVNV Funding, LLC and Mann Bracken LLC, and from whom LVNV and its counsel then

sought to collect on that default judgment in the District of Columbia.

65.     The underlying transaction for which Defendants seek to collect is a "consumer

credit sale" pursuant to D.C. Code § 28-3814(a).

66.     Defendants are "debt collectors" pursuant to D.C. Code § 28-3814(b)(3), because

they are persons engaging directly or indirectly in debt collection.

67.     D.C. Code § 28-3814(f) states that no creditor or debt collector shall use any

fraudulent, deceptive, or misleading representation or means to collect or attempt to collect

claims or to obtain information concerning consumers," including "any false representation or

implication of the character, extent, or amount of a claim against a consumer, or of its status in

any legal proceeding."

68.     Defendant LVNV has used fraudulent, deceptive and misleading representations

as part of its efforts to collect debts from Plaintiff and the Class, in violation of the DCFDCPA.

69.     By pursuing collection of a debt from Plaintiff and the Class where it has no evidence that it owns the underlying debt, or that the target of the collection action incurred it, despite full knowledge that its prior counsel had used illegal, deceptive, and predatory tactics to collect on debts, Defendant has used fraudulent, deceptive, and misleading representations in violation of the DCFDCPA.

70.     By seeking to collect on judgments for which it has no proof that the debtor incurred the underlying debt, or was ever served with judicial process on the underlying debt, and for which it knows that Mann Bracken was the firm that originally sought to collect on the debt, and for which it at no time prior to seeking to collect on the debt from Plaintiff did it ever verify that the debt was due and owing or that proper processes and procedures had been followed, even when confronted with evidence that such processes were completely deficient and lacking, PSC has engaged in fraudulent, deceptive and misleading representations and means to collect or attempt to collect claims, in violation of the DCFDCPA.

71.     The District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3905(k) states, "A consumer may bring an action seeking relief from the use of a trade practice in violation of a law of the District," and may recover treble damages or $1,500 per violation, whichever is greater; reasonable attorney's fees, punitive damages, actual damages, and any other relief that the court determines to be proper.

72.     By violating the DCFDCPA, Defendants have engaged in trade practices in violation of a law of the District, which is recoverable under the DCCPPA.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court:

1.     Certify a Class and a DC Subclass as described herein;

2.      Award special and general damages as will be proved at trial against all of the Defendants, jointly and severally;

3.      Award to the Plaintiff statutory damages in the amount of $1,000 for each violation of the FDCPA or $500,000 for the Class because LVNV's net worth exceeds $50,000,000;

4.      Award to the DC Subclass actual, statutory, and/or punitive damages for Defendants' violation of the DCFDCPA;

5.      Award reasonable attorney fees;

6.      Award pre- and post-judgment interest; and

7.      Award such other relief this Court deems just and equitable.

## JURY DEMAND

Plaintiff, by and through her undersigned attorney, hereby demands trial by jury on all issues triable herein pursuant to FRCP, Rule 38(b).

Date: June 11, 2018                                   Respectfully submitted,

/s/ Craig L. Briskin

Craig L. Briskin (DC Bar #980841)
(cbriskin@findjustice.com)
Steven A. Skalet (DC Bar #359804)
MEHRI & SKALET, PLLC
1250 Connecticut Ave. NW, Suite 300
Washington, DC 20036
Tel: (202) 822-5100
Fax: (202) 822-4997

Phillip Robinson (MD27824)
CONSUMER LAW CENTER LLC
8737 Colesville Road, Suite 308
Silver Spring, MD 20910
Tel: (301) 448-1304
phillip@marylandconsumer.com

*Counsel for Plaintiff Erin L. Hamilton*